UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN G. CALKINS, | No. 2:14-cv-01877-AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff's motion for summary judgment is pending. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment in part.

PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB on May 30, 2012. Administrative Record ("AR") 21. Plaintiff's application was denied initially on December 26, 2012, and again upon reconsideration on August 5, 2013. Id. On February 3, 2014, a hearing was held before administrative law judge ("ALJ") Eileen Burlison. AR 21, 33. Plaintiff appeared with his attorney, Jacquie Winkley Merritt, at the hearing. AR 21. Both plaintiff and Connie Guillory, an

1

impartial vocational expert, testified at the hearing. Id. In a decision dated April 2, 2014, the ALJ found plaintiff not disabled. AR 33.

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the social security act through September 30, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since May 4, 2012, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease, status post lumbar and cervical surgeries, spinal stenosis, and lumbosacral radiculopathy.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with 6 hours of sitting, and 4 hours of standing/walking, in an 8-hour workday. He may perform occasional postural activities. The claimant must avoid extremes of heat and cold, vibration, and hazards (i.e. working at heights or operating dangerous/moving machinery).
>
> 6. The claimant is capable of performing past relevant work as a Project Manager/Estimator. This work does not require the performance of work/related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 4, 2012, through the date of this decision.

AR 21–32 (citations to the Code of Federal Regulations omitted).

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on June 16, 2014, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 3–5.

## FACTUAL BACKGROUND

Born on October 24, 1959, plaintiff was 52 years old, which is defined as an individual closely approaching advanced age, on the disability onset date and 54 years old at the time of his administrative hearing. AR 31. Plaintiff last engaged in a substantial gainful activity as a construction project estimator in 2008. ECF No. 16 at 4.

2

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). In addition, "[t]he ALJ in a social security case has an independent ''duty to fully and fairly develop the record and to assure that the claimant's interests are considered.''" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

1    The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that (1) the ALJ erred by finding that plaintiff's depression and sleep apnea were not severe; (2) the ALJ failed to evaluate the relevant evidence as required by 20 C.F.R. §404.1526(c) in determining that plaintiff does not suffer from a listed or listed-level severity impairment; (3) the ALJ's reasons for discounting the report of plaintiff's daughter and concluding that plaintiff's testimony was not entirely credible were insufficient; and (4) the ALJ improperly rejected the medical opinion of plaintiff's treating physician, Dr. Michael Song, M.D. The Commissioner, in turn, argues that the ALJ's findings are supported by substantial evidence and are free from legal error. For the reasons discussed below the court finds that the ALJ erred both in his determination of plaintiff's credibility and by declining to give Dr. Song's opinion controlling weight. For the foregoing reasons the court will grant plaintiff's motion for summary judgment in part and remand for further consideration consistent with this opinion.

A.   Credibility Determination

   1.   Legal Standards

Once a claimant shows an underlying impairment which may reasonably be expected to produce the pain or other symptoms, and absent any evidence of malingering, the ALJ must provide "clear and convincing" reasons to discredit the claimant's testimony regarding the severity of symptoms.[1] Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ's

---

[1] In a footnote, the Commissioner seems to argue that the "clear and convincing" standard does not apply here. ECF No. 24 at 28 n.10. The Commissioner acknowledges the Ninth Circuit has settled upon a clear and convincing standard where the ALJ has found an underlying impairment and no evidence of malingering. Id. Nevertheless, the Commissioner argues that the Ninth Circuit's standard is contrary to agency regulations and federal statute. Id. The Commissioner's (continued…)

4

credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345–46 (9th Cir.1991) (en banc )). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms. Id.; see also Social Security Ruling ("SSR") 96–7p.[2] The ALJ may not, however, "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain" once the claimant has produced objective medical evidence of an underlying impairment. Burch, 400 F.3d at 680. "If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan, 169 F.3d at 599.

2.  Analysis

The court finds that the ALJ does not give clear and convincing reasons supported by substantial evidence for discounting plaintiff's testimony, and will accordingly remand for reconsideration of plaintiff's credibility.

The ALJ's discussion of plaintiff's testimony consisted of the following:

> The claimant alleged disability based on back problems including lumbar fusion and neck fusion, and depression (2E). He has asserted his impairments cause him to experience low back pain, poor memory and concentration, suicidal ideation, sleep

---

argument is unconvincing. The federal statute and Ninth Circuit cases cited by the Commissioner do not contradict the Ninth Circuit's explicit instructions on this issue. See id. (citing 42 U.S.C. § 405(g); Monjaraz-Munoz v. INS, 327 F.3d 892, 895 (9th Cir. 2003); and Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)). In any event, this court is bound by the Ninth Circuit's interpretation of federal law.

[2] "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009). The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations." Bunnell, 947 F.2d at 346 n.3.

>disturbance, weakness in both upper anterior legs, severe pain in the bottom of his feet, neck pain, tailbone pain, severe aching in his groin, and pain/aching in the left hip (2E; 6E; 10E). The claimant also reported twitching in his eyes and shaking a lot (Hearing Testimony). He testified he has frequent falls and difficulty walking more than 20 feet without the use of a walker (Hearing Testimony). Regarding functional limitations, he reported problems lifting, reaching, walking, standing, sitting, climbing stairs, performing postural movements, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others (3E; 7E).
>
>Despite his allegations, the claimant reported taking care of his own personal care, preparing simple meals, doing household chores including laundry and dishes, taking care of a dog, driving a car, and shopping in stores (3E; 7E). He reported he could sit and stand for up to an hour at a time (3E). The claimant reported being able to count change, use a checkbook/money order, watch television, and read about farming and construction (3E; 7E).
>
>After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible for the reasons explained in this decision.

AR 25–26. The ALJ made no finding of malingering; therefore, her reasons for finding plaintiff's pain testimony to be not credible must be clear and convincing. See Lingenfelter, 504 F.3d at 1036.

The ALJ does not explicitly state the basis of her adverse credibility determination or even specify the portion of plaintiff's testimony that is not credible. See AR 16 (finding plaintiff's testimony regarding his pain symptoms not credible "for the reasons explained in this decision"). Accordingly, the ALJ erred because her opinion is not specific enough to allow the court to determine why she discredited plaintiff's testimony. See Lester, 81 F.3d at 833 n.11 (holding the ALJ's general statement that the claimant's pain testimony was not credible or supported by the objective medical findings "'as explained in detail in the analysis section of the decision'" was insufficient); Orteza, 50 F.3d at 750.

Even if the ALJ had explicitly stated her reasons for finding plaintiff's testimony not to be credible, however, it is unlikely those reasons would be supported by substantial evidence. The ALJ appears to have relied in part on plaintiff's self-described daily activities. See AR 25–26.

Evidence that a claimant engaged in certain daily activities can support an adverse credibility determination as long as (1) those activities contradicted the claimant's testimony; *or* (2) the claimant engaged in those activities for a substantial portion of the day and they involved skills transferable to the workplace. Orn, 495 F.3d at 639.

The ALJ's decision points to reports from plaintiff that he lives independently, prepares simple meals, visits the community center, listens to music, checks email daily, does household chores such as laundry and dishes, takes cares of his dog, shops, drives a car, counts change, uses a checkbook/money order, watches television, and reads. AR 25–26. The records cited by the ALJ include two Function Reports, in which plaintiff states that while he spends most of his days in bed due to pain in his lower back and legs, he will do simple chores such as washing dishes and doing the laundry once a week as needed. AR 240–41, 242, 266, 268. Plaintiff's reports also state that he feeds his dog once a day and goes to the grocery store, with some difficulty, once a week. AR 243, 267, 269. Plaintiff also testified that he drives when necessary, but that doing so causes him considerable pain. AR 50–51. Finally, plaintiff testified he visits the community center occasionally to check email when his pain symptoms allow it. AR 61.

These are not the kind of daily activities that support an adverse credibility finding. As the Ninth Circuit has explained many times, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." Smolen, 80 F.3d at 1284 n.7. Plaintiff's self-described daily activities do not contradict his testimony regarding his pain symptoms. See AR 25 (describing plaintiff's alleged pain symptoms). In addition, it would be impossible to conclude from plaintiff's description of his daily activities that he engages for a substantial portion of the day in activities that involve skills transferable to the workplace. Accordingly, the ALJ's finding that plaintiff's pain testimony is not credible because it is contradicted by his daily activities is not supported by substantial evidence.

////

////

B.   Medical Expert Testimony

   1.   Legal Standards

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine [d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating doctor is accorded more weight than the opinion of a doctor who did not treat the claimant, and the opinion of an examining doctor is, in turn, entitled to greater weight than the opinion of a nonexamining doctor. Id. (citations omitted); 20 C.F.R. § 404.1527(c)(1)(2).

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). If contradicted by another doctor, the opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 830–31 (citation and internal quotation marks omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. An ALJ, however, "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

   2.   Medical History

Plaintiff has a long medical history of back pain related to degenerative disc disease. Plaintiff's alleged onset date of disability; however, is May 4, 2012. AR 21. Accordingly, the court will recount plaintiff's medical history beginning shortly before that date only.

On December 15, 2011, plaintiff had an initial neurosurgery consult with Dr. Song. AR 656–57. Dr. Song's notes indicate that plaintiff's chief complaint was shooting bilateral leg pain and numbness on the bottoms of his feet, but that he also experienced back pain. AR 656. Plaintiff had undergone four neck surgeries and a back surgery by that time. Id. Dr. Song

8

1  diagnosed plaintiff with significant disc degeneration and lateral recess stenosis. Id. Dr. Song
2  also noted that plaintiff had failed extensive conservative treatment including epidural steroid
3  injections, physical therapy, and tincture of time. Id. Based on these observations Dr. Song
4  recommended, and plaintiff enthusiastically agreed to, further back surgery to "help increase the
5  lordosis and increase the fusion rate." Id.

6  On January 12, 2012, during a post-operative consolation with a physician's assistant
7  (PA), Christina Collins, plaintiff stated that his bilateral leg pain had disappeared with the
8  surgery, but that he had begun experiencing pain in his right hip. AR 658–59. Ms. Collins
9  opined that he was most likely suffering from bursa, and gave him a medrol dose pack to decrease
10 his lumbar swelling and pain. Id. On January 26, 2012, plaintiff had a follow up visit with Dr.
11 Song. AR 660. During that visit, plaintiff stated he was experiencing more leg and back pain
12 than he had been expecting before the operation. Id. Dr. Song scheduled plaintiff for a CAT scan
13 and MRI of his lumbar spine to make sure nothing was wrong. Id. Dr. Song also prescribed him
14 Dilaudid, Percocet, and Valium. Id. According to notes from Dr. Song dated February 6, 2012,
15 plaintiff's CAT scan and MRI did not reveal anything abnormal. Id. At that time, Dr. Song
16 prescribed plaintiff Neurontin and scheduled a follow up visit two weeks later for a nonfocal
17 exam. Id. Dr. Song noted that he expected plaintiff would improve by then. Id.

18 On February 16, 2012, plaintiff saw Alexander Janas, a nurse at the same office as Dr.
19 Song, for a follow up visit. AR 662–63. Plaintiff indicated during his visit that he was still
20 experiencing back and leg pain, and had recently been to see another doctor, Dr. Salinger, for
21 pain management. AR 662. Dr. Salinger had increased plaintiff's prescription of Neurontin and
22 switched his prescription of Percocet to Norco. Id. Plaintiff had also just started physical
23 therapy. Id.

24 During another follow up visit with Mr. Janas on March 15, 2012, plaintiff stated he was
25 still going to physical therapy, although he did not feel that it helped much. AR 664–65. Plaintiff
26 was still experiencing back and leg pain, and was taking Percocet, Celebrex, and Neurontin to
27 manage it. Id. Plaintiff also stated at the time that he had returned to work but found that he was
28 making a lot of mistakes because the pain made it difficult to concentrate. Id. Dr. Salinger had

expressed an interest to plaintiff in trying epidural steroid injections and a coccygeal injection, and Mr. Janas recommended he follow through on that. Id. Mr. Janas also generally recommended that plaintiff continue with his physical therapy and pain management sessions. Id.

On April 5, 2012, plaintiff had another follow up visit with Mr. Janas. AR 666–67. At that time, plaintiff stated he was experiencing neck pain that only abated if he maintained a neutral spine position and did not move his head at all. Id. Nevertheless, he stated that his pain had improved over the course of the last week. Id. Although plaintiff had been taking Percocet, he stated that had not been helping with his pain. Id. Plaintiff did; however, state that he had received an epidural steroid injection from Dr. Salinger that reduced his pain by about 40%. Id. Mr. Janas scheduled a follow up appointment for a few weeks later with Dr. Song and scheduled plaintiff for further x-rays to ensure there were no hardware malfunctions or evidence of fractures or malalignment. Id.

On May 10, 2012, plaintiff had a follow up visit with Dr. Song. AR 668. Dr. Song noted that the CAT scan and MRI of plaintiff's low back on file looked perfect and the x-rays of his cervical spine looked good as well. Id. Nevertheless, plaintiff asserted that surgery had not alleviated his pain at all. Id. Dr. Song stated that he could not see any anatomical reason why plaintiff should not feel better over time. Id. Accordingly, he recommended that plaintiff continue seeing Dr. Salinger for his pain management and instructed plaintiff to return in 2 to 3 months for new x-rays. Id.

Plaintiff's next visit to Dr. Song's office was on July 24, 2012. AR 670–71. During plaintiff's visit he again stated that he did not feel any relief from his late 2011 back surgery. Id. Dr. Song reported that plaintiff felt 75% of his pain in his anterior thigh, and 25% of his pain in his low back. Id. Dr. Song noted that x-rays showed some screw loosening, but that there appeared to be solid bone growth in the disk space at L4-5, L5-S1. Id. Despite the fact that plaintiff seemed to be exhibiting bone growth Dr. Song stated he would schedule plaintiff for a bone stimulator as soon as possible. Id. Dr. Song also noted that plaintiff suffered from chronic L4-5, L5-S1 radiculopathy but that he did not believe that was the source of plaintiff's pain. Id.

1  Finally, Dr. Song noted that plaintiff was a very worthwhile candidate for chronic pain syndrome.
2  Id.

3  Plaintiff next saw Dr. Song on November 13, 2012. AR 674. At that time plaintiff stated
4  he was experiencing positive results from a spinal cord stimulator trial surgically implanted on
5  October 8, 2012. Id.; see also AR 711–12. In light of plaintiff's improvement Dr. Song approved
6  plaintiff for surgical placement of a spinal cord stimulator by Dr. S. Berman, M.D. AR 674, 694–
7  95, 697. Dr. Song scheduled a follow up visit to take place in three months. Id. Dr. Berman then
8  surgically implanted a permanent spinal cord stimulator into plaintiff in December 2012. AR
9  694–95, 697.

10  Plaintiff also visited the Nevada Pain and Spine Specialists ("Spine Specialists")
11  complaining of chronic pain in his neck, rated at one out of ten on his prescribed medications in
12  December 2012. AR 752–53. Plaintiff saw a medical assistant, Maria Cortez, who gave him a
13  cervical facet injection. Id. Later that same month plaintiff visited the Spine Specialists to have
14  staples from his last surgery removed. AR 750. At that time plaintiff rated his pain at an eight
15  out of ten. Id. Plaintiff ultimately visited the Spine Specialists a total of ten times between
16  January and March 2013. AR 724, 727, 729, 731, 734, 736, 739, 742, 745, 748. During
17  plaintiff's visits he complained of back and leg pain that would not subside. Id. The clinic made
18  many attempts to alleviate his pain symptoms, including changing his prescription medications
19  and weaning him off of them altogether but nothing seemed to work. Id. By plaintiff's last visit
20  on March 29, 2013, he was reported being very frustrated that his permanent spinal cord
21  stimulator was not working as well as the trial version. AR 724. Plaintiff still reported constant
22  back and leg pain, but stated that his prescription of Nortriptyline was helping. Id.

23  Plaintiff's disability claim was initially evaluated by Dr. Mayenne Karelitz, M.D., on
24  December 26, 2012. AR 72–82. Dr. Karelitz opined that plaintiff could frequently lift 10
25  pounds, occasionally lift 20 pounds, and could both sit and stand/walk for six hours each in an 8-
26  hour workday. AR 79–80. Dr. Karelitz also opined that plaintiff could perform frequent
27  balancing, stooping, and kneeling, as well as occasional climbing, crouching, and crawling. Id.
28  Finally, Dr. Karelitz opined that plaintiff should avoid concentrated exposure to extreme cold and

heat, vibration, and hazards. Id. Upon reconsideration on August 5, 2013, plaintiff's application was evaluated by Dr. Libbie Russo, M.D., who opined that plaintiff had the same restrictions, except that he was limited to standing/walking for four hours total in an 8-hour workday. AR 85–102.

On February 7, 2013, plaintiff had a follow up visit with Dr. Song. AR 793. Plaintiff stated during that visit that his most recent surgery had not alleviated his pain, but Dr. Song asked him to give the surgery more time. Id. Plaintiff visited Dr. Song again on May 20, 2013, with complaints of low back pain radiating to the left leg with numbness and weakness. AR 795. Plaintiff also stated that his symptoms were exacerbated with driving and sitting at the computer. Id. Dr. Song stated that he would defer to Dr. Berman regarding the next step in his care at that time. Id.

In June 2013, Dr. Song completed a Medical Source Statement opining on plaintiff's limitations. AR 799–803. Dr. Song noted plaintiff's diagnoses of lumbar stenosis, lumbar degenerative disc disease, and cervical herniated nucleus pulposus (HNP) with myelopathy. AR 799. Dr. Song opined that plaintiff could sit, stand, and walk for one hour total in an 8-hour workday with at least 15 minute breaks every hour. AR 801. Dr. Song also opined that plaintiff could occasionally use his hands and feet and had to avoid heights and moving machinery. AR 801, 803. Dr. Song explained that his recommendations were based on plaintiff's complaints of: numbness and weakness that worsens with driving and sitting at computers; low back pain that radiates to the left leg with numbness and weakness that worsens with activity; and neck pain. AR 801–03.

On July 7, 2013, plaintiff visited the ER complaining of severe back pain and saw Dr. Lisa Hudson, M.D. AR 815. Dr. Hudson's notes indicate that plaintiff was taking Suboxone for the pain at the time. Id. Dr. Hudson determined that plaintiff was in stable condition and discharged him with a prescription for Ultram and educational materials on back pain. AR 817. Dr. Hudson also instructed plaintiff to follow up with the Health Care Washoe County within one to two days. AR 817, 829.

From August 2013 to April 2014 plaintiff also regularly visited Dr. Samuel R. Carlton, M.D., at the Sierra Regional Spine Institute. AR 855–73, 972–80. Records from that period indicate that plaintiff's pain symptoms never alleviated, despite periodic changes in medication. Id. Dr. Carlton routinely described plaintiff as appearing distressed and uncomfortable, and noted difficulty in completing exams due to plaintiff's pain symptoms. Id. During his January 3, 2014 appointment, plaintiff requested a walker for more stability during ambulation. AR 872. On February 26, 2015, plaintiff began complaining of increasing pain and numbness in his left arm. AR 972. Dr. Carlton arranged for plaintiff to see an orthopedist, Dr. Barakat, who advised that his arm pain was likely c-spine related and recommended that this be investigated. Id. During plaintiff's last visit with Dr. Carlton he noted he had recently been to the ER and hospital for injuries to his back and neck related to two separate accidents. AR 978.

On January 28, 2014, plaintiff visited the University of California, San Francisco Medical Center and saw Dr. Thoha M. Pham, M.D. AR 955. At the time, plaintiff was on gabapentin, but had stopped using his spinal cord stimulator, as he was not seeing any benefit. Id. Dr. Pham modified his medications and scheduled a repeat caudal epidural steroid injection, as he had reported getting some relief from those injections. AR 958. Plaintiff returned for his injection on February 5, 2014. AR 959. Plaintiff returned to UCSF Medical Center on March 18, 2014, stating that his pain symptoms had changed very little in the intervening months, although he had resumed using his spinal cord stimulator and that alleviated his pain somewhat. AR 960–61. During his visit plaintiff rated his pain symptoms at a seven out of ten. AR 961. Dr. Pham again modified plaintiff's medications at that time, instructed the medical center to obtain procedure notes from plaintiff's previous pain physician, and recommended that plaintiff be considered for long acting medications trials. AR 964.

3. Analysis

The court finds that the ALJ committed legal error by failing to articulate specific and legitimate reasons supported by substantial evidence for affording Dr. Song's medical opinion little weight.

13

1    Finding that Dr. Song's medical opinion was entitled to little weight, the ALJ stated the
2 following:

> I accord little weight to Dr. Song's Medical Source Statement as it relies almost wholly on subjective statements of problems sitting at a computer and driving for long periods.  These statements alone do not support the extensive restrictions suggested by Dr. Song.  Further, Dr. Song's treatment notes do not support these limitations.  His notes show the claimant's pain was relatively well controlled with medication and the claimant reported improvement with the trial spine stimulator.  Further, imaging studies did not support the level of pain alleged by the claimant.

AR 30.  First, the ALJ's finding that Dr. Song's opinion is entitled to less weight because it is based almost entirely on plaintiff's subjective allegations is not supported by substantial evidence.  A treating physician's medial opinion cannot be disregarded solely because it relies upon the claimant's subjective complaints unless the subjective complaints themselves have been refuted.  Webber v. Astrue, 305 F. App'x 311, 314 (9th Cir. 2008) (citing Tonapetyan, 242 F.3d at 1149).  As the court has already explained, the ALJ's opinion does not articulate clear and convincing reasons supported by substantial evidence for disregarding plaintiff's subjective pain allegations.  Accordingly, the fact that Dr. Song's opinion relies on plaintiff's allegations is not a sufficient reason, in and of itself, to discount it.

In addition, the ALJ's finding that Dr. Song's medical opinion is contradicted by his own treatment notes and the medical evidence is not supported by substantial evidence.  An ALJ may reject a treating physician's opinion by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ must do more than offer her conclusions; however, she must set forth her own interpretations and explain why they, rather than the doctors', are correct.  Orn, 495 F.3d at 632 (citing Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988)).  The ALJ's opinion includes a detailed summary of plaintiff's medical history.  AR 26–30.  The ALJ's summary; however, does not explain *why* her interpretation of the evidence, rather than Dr. Song's, is correct.

Furthermore, Dr. Song's own treatment notes do not contradict his opinion, they confirm it. During his visits with Dr. Song, plaintiff consistently complained of pain symptoms in his lower back, leg, and neck. AR 656–74, 793–95. After plaintiff's surgery in late 2011, Dr. Song expected plaintiff's pain symptoms would improve. AR 668. Unfortunately, they did not. And while, at one point, Dr. Song did state that he saw "no anatomical reason" why plaintiff should not see improvement soon, that is by no means a contradiction of his opinion. Id. In addition, the record as a whole does not contradict Dr. Song's opinion. Plaintiff consistently reported experiencing back and neck pain to his various physicians. He sought medical care for pain with frequency and persistence. Plaintiff's treatment for his pain symptoms included but was not limited to various pain medications, surgical insertion of a spinal cord stimulator, and epidural steroid injections. Although the ALJ does not explicitly state so, her evaluation of Dr. Song's opinion seems to derive from the fact that imaging studies did not always reveal the cause of plaintiff's pain. See, e.g., AR 668, 670–71. The fact that the objective medical evidence does not fully corroborate plaintiff's pain allegations every step of the way; however, is an insufficient reason to reject a treating physician's opinion. See Bunnell, 947 F.2d at 345.

In accordance with the foregoing, the court will grant plaintiff's motion for summary judgment in part and remand for further proceedings consistent with this order.

C.      Remand

Plaintiff requests that the decision of the ALJ be vacated and this case be remanded for the determination of benefits. The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. Barman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). In this matter, the court concludes that outstanding issues remain that must be resolved before a determination of disability can be made.[3] Pursuant to this remand, the ALJ shall reconsider the credibility of plaintiff's testimony and Dr. Song's Medical Source Statement.[4]

---

[3] Plaintiff briefly claims that the credit as true doctrine mandates a remand for the determination of benefits. ECF No. 16 at 14. However, the credit as true doctrine does not apply where outstanding issues remain to be resolved on remand. Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009).

[4] In light of the court's finding that the ALJ erred by discounting Dr. Song's medical opinion and (continued…)

CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is GRANTED IN PART; and

2. This matter is remanded for further proceedings consistent with this order.

DATED: September 17, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

plaintiff's testimony, it declines to reach plaintiff's arguments that (1) the ALJ erred by finding that plaintiff's depression and sleep apnea were not severe; (2) the ALJ failed to evaluate the relevant evidence as required by 20 C.F.R. §404.1526(c) in determining that plaintiff does not suffer from a listed or listed-level severity impairment; and (3) the ALJ's reasons for discounting the report of plaintiff's daughter were insufficient.